**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| ABELARDO ENRIQUEZ,<br><br>            Plaintiff,<br><br>vs.<br><br>J.P. MORGAN CHASE BANK, N.A.; CAL-WESTERN RECONVEYANCE CORPORATION; CHASE HOME FINANCE, LLC; and Does 1 through 50 inclusive,<br><br>            Defendants. | 2:08-cv-01422-RCJ-LRL<br><br><br>**ORDER** |

      Plaintiff Abelardo Enriquez ("Plaintiff"), who is appearing *pro se*, filed the present lawsuit against Defendant J.P. Morgan Chase Bank, N.A. ("J.P. Morgan"); Cal-Western Reconveyance Corporation ("Cal-Western"); and Chase Home Finance, LLC ("Chase Home") (collectively, "Defendants") to challenge a nonjudicial foreclosure on real property formerly owned by Plaintiff. Defendants have filed a Motion for Judgment on the Pleadings and to Expunge Lis Pendens. (#10). Plaintiff has filed a Motion for Voluntary Dismissal. (#11, #15).

**I.    BACKGROUND**

      On August 1, 2007, Plaintiff entered into a loan agreement with Defendant J.P. Morgan in the amount of $456,000.00 (the "Loan"), which named Defendant J.P. Morgan as the lender. (#1, Ex. A. at ¶ 9; #10, Ex. A). In connection with the promissory note signed by both Plaintiff and Defendant J.P. Morgan (the "Note"), Plaintiff executed a deed of trust covering the property listed at 5716 Baronese Street, North Las Vegas, NV 89031 (the "Subject Property"). (#10, Ex. B).

1 Defendant J.P. Morgan subsequently transferred the servicing rights in the Loan to Defendant Chase
2 Home and substituted Defendant Cal-Western as trustee. (#1, Ex. A at ¶¶ 16, 21; #10, Ex. C).
3      Plaintiff eventually defaulted on the Loan. As a result, Defendant Cal-Western executed a
4 Notice of Breach and Default and of Election to Cause Sale, which was recorded June 2, 2008. (#1,
5 Ex. A at ¶ 22). A public sale was conducted on September 23, 2008, and the Subject Property was
6 sold. (#10, Ex. D).
7      On September 22, 2008, Plaintiff filed the present lawsuit against Defendants in the District
8 Court for Clark County, Nevada (#1, Ex. A), which Defendants removed to federal court on October
9 20, 2008. (#1). Plaintiff also recorded a Lis Pendens against the Subject Poperty. After the
10 pleadings were filed, Defendants filed their Motion for Judgment on the Pleadings and to Expunge
11 Lis Pendens (#10). Plaintiff has not filed a response to Defendants' motion. Instead, Plaintiff has
12 filed a Motion for Voluntary Dismissal (#11, #15), which Defendants have opposed.

13 **II.   LEGAL STANDARDS**

14      **A.   Motion for Judgment on the Pleadings**

15      Defendants ask the Court to grant their Motion for Summary Judgment on the Pleadings.
16 Rule 12(c) of the Federal Rules of Civil Procedure provides: "[a]fter the pleadings are closed-but
17 early enough not to delay trial-a party may move for judgment on the pleadings." Fed. R. Civ. P.
18 12(c). "For purposes of the motion, the allegations of the non-moving party must be accepted as
19 true, while the allegations of the moving party which have been denied are assumed to be false.
20 Judgment on the pleadings is proper when the moving party clearly establishes on the face of the
21 pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as
22 a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1550 (9th
23 Cir. 1990). Generally, if matters outside the pleadings are presented to and considered by the court,
24 the motion must be converted into a Rule 56 motion for summary judgment and the parties given
25 a reasonable opportunity to present additional material. Fed. R. Civ. P. 12(d); *Bingue v. Prunchak*,

512 F.3d 1169, 1172 n.4 (9th Cir. 2008). Where the court grants a Rule 12(c) motion, the prevailing party obtains a final judgment in their favor.

The standards governing a Rule 12(c) motion for judgment on the pleadings are the same as those governing a Rule 12(b)(6) motion to dismiss for failure to state a claim. *See Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989); *Lonberg v. City of Riverside*, 300 F.Supp.2d 942, 945 (C.D. Cal. 2004); *Lake Tahoe Watercraft Recreation Ass'n v. Tahoe Regional Planning Agency*, 24 F.Supp.2d 1062, 1066 (E.D. Cal. 1998). To survive a motion to dismiss for failure to state a claim, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

**B.     Motion for Voluntary Dismissal**

Under Rule 41(a)(1), a plaintiff has an absolute right to voluntarily dismiss his action prior to service by the defendant of an answer or a motion for summary judgment. *See Concha v. London*, 62 F.3d 1493, 1506 (9th Cir. 1995) (citing *Hamilton v. Shearson-Lehman American Express*, 813 F.2d 1532, 1534 (9th Cir. 1987)). A plaintiff may dismiss his action so long as the plaintiff files a notice of dismissal prior to the defendant's service of an answer or motion for summary judgment. Because Plaintiff filed his Motion for Voluntary Dismissal after Defendants filed and served their Answer, Plaintiff has forfeited his absolute right of voluntary dismissal.

FRCP 41(a)(2) provides that "[e]xcept as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper . . . . Unless the order states otherwise, a dismissal under this paragraph (2) is without prejudice." To analyze motions for voluntary dismissal brought pursuant to this rule, courts must determine: (1) whether to allow the dismissal; (2) whether dismissal should be with or without prejudice; and (3) what terms and conditions, if any, should be imposed. *See Williams v. Peralta Cmty. Coll. Dist.*, 227 FRD 538, 539 (N.D. Cal. 2005); *Burnette v. Godshall*, 828 F Supp 1439, 1443 (N.D. Cal. 1993), aff'd, *Burnette v. Lockheed Missiles & Space Co.*, 72 F3d 766, 767 (9th Cir. 1995). "[T]he decision

to grant a voluntary dismissal under Rule 41(a)(2) is addressed to the sound discretion of the District Court." *Hamilton v. Firestone Tire & Rubber Co., Inc.*, 679 F.2d 143, 145 (9th Cir. 1982).

**III.   TRUTH IN LENDING ACT**

Plaintiff alleges that Defendants violated the Truth in Lending Act ("TILA"). Plaintiff alleges that Defendants violated the TILA by failing to make required disclosures and accounting as to the true finance charges and fees under the Loan, by wrongfully retaining funds belonging to Plaintiff, and by failing to disclose the status of the ownership of the Loan. (#1, Ex. A at ¶ 28).

The purpose of TILA is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a). TILA requires creditors to disclose certain information about the terms of the loan to the prospective borrower. *See, e.g.*, 15 U.S.C. §§ 1631–1632; 15 U.S.C. § 1638; 12 C.F.R. § 226.17. On its face, TILA burdens only creditors with disclosure obligations. *See* 15 U.S.C. §§ 1631, 1635; *see, e.g., Vallies v. Sky Bank*, 432 F.3d 493, 496 (3d Cir. 2006) (observing that TILA's regulation "vests the duty of disclosure on the, and only the, actual creditor"); *In re Currency Conversion Fee Antitrust Litig.*, 265 F.Supp.2d 385, 431 (S.D.N.Y. 2003) (holding that TILA does not permit conspiracy or aiding and abetting actions because the statute does not "extend [a creditor's disclosure] duty or the benefits of that duty to anyone else"). 15 U.S.C. § 1602(f) defines "creditor" as referring "only to a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit . . . and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable . . . . "

   **A.   Rescission**

Plaintiff seeks rescission under the TILA. TILA § 1635 addresses a borrower's right of rescission. Under this provision, a debtor who secures a loan on primary residential property has

1  "the right to rescind the transaction until midnight of the third business day following the
2  consummation of the transaction or the delivery of the information and rescission forms . . .
3  whichever is later." 15 U.S.C. § 1635(a). If the lender neglects to make a material disclosure as
4  defined in the implementing regulations, the borrower's right to rescind may be extended for up to
5  three years. 15 U.S.C. § 1635(f); 12 C.F.R. § 226.23(a)(3). The required material disclosures
6  include the annual percentage rate, the finance charge, the amount financed, the total payments, the
7  payment schedule, and the disclosures referred to in § 226.32(c) and (d).

8  In this case, Plaintiff's claim for rescission fails because he has not clearly stated which
9  disclosures Defendants failed to make, but instead relies on mere legal conclusions. Plaintiff has not
10 specified any particular items that Defendants did not disclose other than "the true finance charge
11 and fees." (#1, Ex. C at 5). Plaintiff has not stated the nature of these charges or fees or how they
12 are related to the relevant transaction.

13 **B.    Punitive Damages**

14 Plaintiff seeks punitive damages for Defendants' alleged violation of TILA. TILA does not
15 provide for recovery of punitive damages. *See* 15 U.S.C. § 1640(a) (providing only for actual and
16 other specified damages without mention of punitive damages). *See, e.g., Marcelos v. Dominguez*,
17 No. C 08-00056, 2008 WL 2788173, at *11 (N.D. Cal. 2008. July 18, 2008).

18 **C.    Statutory or Compensatory Damages**

19 Plaintiff seeks compensatory damages for Defendants' alleged violation of TILA. TILA
20 permits private litigants to sue for actual damages sustained "as a result" of a TILA violation. 15
21 U.S.C. § 1640(a)(1). However, TILA provides a one-year statute of limitations for damages claims.
22 15 U.S.C. § 1640(e) ("Any action under this section may be brought in any United States district
23 court, or in any other court of competent jurisdiction, within one year from the date of the occurrence
24 of the violation."). This action was brought on September 22, 2008, over a year after the Note was
25 executed, which occurred on August 1, 2007.

For the foregoing reasons, Defendants' Motion for Judgment on the Pleadings as to Plaintiff's TILA claim is granted.

## IV.  REAL ESTATE SETTLEMENT PROCEDURES ACT

Plaintiff alleges that Defendants violated the Real Estate Settlement Procedures Act ("RESPA").  RESPA was enacted to institute:

> significant reforms in the real estate settlement process . . . to insure that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices that have developed in some areas of the country.

12 U.S.C. § 2601(a).  RESPA applies to lenders who offer "federally related mortgage loans." *See* 12 U.S.C. § 2605.

Plaintiff alleges that Defendants violated 12 U.S.C. § 2605(b) by transferring the Loan servicing rights to Chase Home without giving the required notice to Plaintiff.  Under 12 U.S.C § 2605(b), a servicer of any federally related mortgage loan is required to notify the borrower in writing of any assignment, sale, or transfer of the servicing of the loan to any other person or business at least 15 days prior to the transfer.  With respect to bringing a claim under 12 U.S.C. § 2605, there is a three year statute of limitations.  *See* 12 U.S.C. § 2614.  The Note expressly stated that Plaintiff promised to make payments to "J.P. Morgan Bank, N.A. c/o Chase Home Finance, LLC . . . ." (#10, Ex. A).  Therefore, from the outset, Plaintiff had notice and agreed to the arrangement involving Defendant Chase Home.  Furthermore, Plaintiff admits in his Complaint that he received a mortgage loan statement on October 1, 2007, which instructed Plaintiff to send his loan payment to Defendant Chase Home.  Clearly, Plaintiff had notice of the servicing rights being vested in Defendant Chase Home.

Plaintiff also alleges that Defendants violated RESPA by placing loans "for the purpose of unlawfully increasing or otherwise obtaining yield spread fees and sums in excess of what would have been lawfully earned."  RESPA requires that borrowers be provided a good faith estimate

1  listing the "amount or range" of settlement charges within three days of receiving a loan application.
2  *See* 12 U.S.C. § 2604(c), 24 C.F.R. § 3500.7(c). To comply with RESPA, a good faith estimate must
3  disclose the yield spread premium ("YSP"). *See* 24 C.F.R. § 3500, App. A, § L (Settlement charges
4  include "indirect payments or back-funded payments to mortgage brokers that arise from the
5  settlement transaction" and "mortgage broker fee[s]."); *Anderson v. Wells Fargo Home Mortg., Inc.*,
6  259 F.Supp.2d 1143, 1146 (W.D.Wash.2003) ("RESPA unambiguously requires lenders . . . to
7  disclose to a loan applicant a variety of information about the proposed loan, including the fact and
8  amount of any YSP to be paid outside closing to the broker by the lender.").

9        The determination whether the YSP in any particular case violates RESPA is guided by a
10 two-part test in which the court considers "(1) whether goods or facilities were actually furnished
11 or services were actually performed for the compensation paid and (2) whether the payments are
12 reasonably related to the value of the goods or facilities that were actually furnished or services that
13 were actually performed." *Bjustrom v. Trust One Mortgage Corp.*, 322 F.3d 1201, 1207 (9th Cir.
14 2003) (quoting RESPA Statement of Policy 1999-1 Regarding Lender Payments to Mortgage
15 Brokers, 64 Fed.Reg. 10080, 10084 (HUD March 1, 1999)) (internal quotation marks omitted).

16       In its current form, even construing the Complaint liberally, the Court cannot determine the
17 factual allegations underlying Plaintiff's conclusory allegations that Defendants have charged an
18 improper YSP. For these reasons, Defendants' Motion for Judgment on the Pleadings as to
19 Plaintiff's RESPA claim is granted.

20 **V.     HOME OWNERSHIP AND EQUITY PROTECTION ACT**

21       Plaintiff alleges that Defendants violated the Home Ownership and Equity Protection Act
22 ("HOEPA") and asks for damages for the injury resulting from such violation.

23       HOEPA, 15 U.S.C. § 1601, *et seq*. applies to certain high risk loans involving higher interest
24 rates and costs. HOEPA only applies to mortgages that fall within the Act's definition:

25       A mortgage referred to in this subsection means a consumer credit transaction that

1  is secured by the consumer's principal dwelling, other than a residential mortgage transaction, a reverse mortgage transaction, or a transaction under an open end credit plan, if-

(A) the annual percentage rate at consummation of the transaction will exceed by more than 10 percentage points the yield on Treasury securities having comparable periods of maturity on the fifteenth day of the month immediately preceding the month in which the application for the extension of credit is received by the creditor; or

(B) the total points and fees payable by the consumer at or before closing will exceed the greater of-

(i) 8 percent of the total loan amount; or

(ii) $400.

15 U.S.C. § 1602(aa)(1).

Plaintiff has failed to allege facts sufficient to establish that the Loan was a high-risk loan subject to HOEPA. Plaintiff must allege facts supporting a conclusion that HOEPA applies to the Loan, under the requirements of § 1602(aa). Furthermore, HOEPA is part of TILA, and as such, is barred by the same one-year statute of limitations discussed above with respect to Plaintiff's TILA claim. Because Plaintiff limited his HOEPA cause of action to seeking damages, Plaintiff's HOEPA claim is time-barred. As a result, Defendants' Motion for Judgment on the Pleadings with respect to Plaintiff's HOEPA cause of action is granted.

## VI.   FAIR DEBT COLLECTION PRACTICES ACT

The Fair Debt Collection Practices Act ("FDCPA") was enacted in 1977 to "eliminate abusive debt collection practices by debt collectors, [and] to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged . . . ." 15 U.S.C. § 1692(e). Under FDCPA, a debt collector may not use any "false, deceptive, or misleading representation" or "unfair or unconscionable" means in connection with the collection of any debt. *Id.*

Generally, creditors are not considered "debt collectors" under FDCPA. 15 U.S.C. § 1692a(6)(F). A "debt collector," as defined by the statute, means "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." *Id*. § 1692a(6). In particular, FDCPA excludes originators of credit from the definition of "debt collector" under certain conditions:

> [A]ny person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which was originated by such person; (iii) concerns a debt which was not in default at the time it was obtained by such person; or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor.

*Id*. § 1692a(6)(F).

In enacting FDCPA, Congress targeted situations where natural constraints would fail to inhibit debt collection practices:

> Unlike creditors, who generally are restrained by the desire to protect their good will when collecting past due accounts, independent collectors are likely to have no future contact with the consumer and often are unconcerned with the consumer's opinion of them.

S. Rpt. No. 95-382, 95th Cong., 1st Sess., reprinted in 1977 U.S.Code Cong. & Admin. News 1695, 1696. Therefore, generally, FDCPA does not apply to creditors. *See Maguire v. Citicorp Retail Svcs., Inc.*, 147 F.3d 232, 236 (2d Cir. 1998); *Krutchkoff v. Fleet Bank*, N.A., 960 F.Supp. 541, 548 (D.Conn. 1996); *Teng v. Metro. Retail Recovery, Inc.*, 851 F.Supp. 61, 66 (E.D.N.Y. 1994).

Defendants fall squarely within the exclusion because all of the debts were originated by Defendants. Accordingly, Defendants cannot be liable under FDCPA because they are excluded from the definition of "debt collectors" due to the fact that they originated Plaintiff's mortgage loan. Therefore, Defendants' Motion for Judgment on the Pleadings for Plaintiff's FDCPA cause of action is granted.

## VII. BREACH OF A FIDUCIARY RELATIONSHIP

Plaintiff alleges that Defendants breached a fiduciary duty that Defendants owed to Plaintiff. The elements for this cause of action require (1) the existence of a fiduciary relationship; (2) a breach of that duty; and (3) damages proximately caused by such a breach. *See Cascade Investments, Inc. v. Bank of America*, N.A., S.A., No. CV-N-99-559, 2000 WL 1842945, at *3 (D.Nev. Sept. 29, 2000) (citing *Fidelity & Deposit Co. v. Curtis Day*, 1993 WL 128073 (N.D. Cal. 1993).

Under Nevada law, "[a] fiduciary relationship is deemed to exist when one party is bound to act for the benefit of the other party. Such a relationship imposes a duty of utmost good faith." *Hoopes v. Hammargren*, 725 P.2d 238, 242 (Nev. 1986) (holding that doctors have fiduciary relationship to patients). "The essence of a fiduciary or confidential relationship is that the parties do not deal on equal terms, since the person in whom trust and confidence is reposed and who accepts that trust and confidence is in a superior position to exert unique influence over the dependent party." *Id*. (internal quotation marks and citation omitted).

The Nevada Supreme Court has held that fiduciary duties arise as a matter of law in certain categories of relationships. *See, e.g., Powers v. United Servs. Auto. Ass'n*, 979 P.2d 1286, 1288 (Nev. 1999) (insurers and insured); *Cook v. Cook*, 912 P.2d 264, 266 (Nev. 1996) (attorney and client); *id*. (spouses); *Fick v. Fick*, 851 P.2d 445, 449–50 (Nev. 1993) (fiancés); *Leavitt v. Leisure Sports Inc.*, 734 P.2d 1221, 1224 (Nev. 1987) (corporate officers or directors and corporation). However, Nevada law does not recognize a fiduciary relationship between a lender and borrower. In *Giles v. General Motors Acceptance Corp.*, 494 F.3d 865 (9th Cir. 2007), the Ninth Circuit did not disturb a Nevada district court's conclusion that "the Nevada Supreme Court would not recognize a fiduciary relationship as a matter of law between a lender and borrower . . . ." *Id.* at 882 (quoting *Yerington Ford, Inc. v. General Motors Acceptance Corp.*, 359 F.Supp.2d 1075 (D.Nev. 2004)). *See also, Cascade Investments, Inc. v. Bank of America*, N.A., S.A., No. CV-N-99-559,

2000 WL 1842945, at *3 (D.Nev. Sept. 29, 2000) (concluding that there is no fiduciary duty between a lender and borrower).

For the foregoing reasons, Plaintiff cannot state a cause of action for breach of a fiduciary relationship. Defendants' Motion for Judgment on the Pleadings for this claim is granted.

## VIII. BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

Plaintiff alleges that Defendants violated the covenant of good faith and fair dealing. A cause of action for breach of the covenant of good faith and fair dealing can lie in contract of tort. Plaintiff has failed to clarify the nature of his cause of action.

### A. Tort

An action in tort for breach of the covenant arises only "in rare and exceptional cases" when there is a special relationship between the victim and tortfeasor. *Insurance Co. of the West v. Gibson Tile Co., Inc.*, 134 P.3d 698, 702 (Nev. 2006) (citation omitted). A special relationship is "characterized by elements of public interest, adhesion, and fiduciary responsibility." *Id.* The tort is generally limited to contractual relationships that involve an unusual element of reliance by one party on the other. *See Premiere Digital Access, Inc. v. Central Telephone Co.*, 360 F.Supp.2d 1161, 1165 (D. Nev. 2005). Examples of special relationships include those between insurers and insureds, partners of partnerships, and franchisees and franchisers. *Id.* Tort liability for breach of the implied covenant of good faith and fair dealing is appropriate where "'the party in the superior or entrusted position' has engaged in 'grievous and perfidious misconduct.'" *State, University and Community College System v. Sutton*, 103 P.3d 8, 19 (Nev. 2004). If a relationship is nothing more than an arm's length transaction, such a relationship cannot give rise to a tort claim for violation of the covenant of good faith and fair dealing. *See Premiere Digital Access, Inc.,* 360 F.Supp.2d at 1165–66 (finding no special relationship of a fiduciary nature, beyond that of arms-length contractual parties, between internet services provider (ISP) and essential equipment

furnisher, precluding finding of liability on part of furnisher, under Nevada law, for breach of implied covenant of good faith and fair dealing arising from contract termination).

Plaintiff has failed to allege that his relationship with Defendants was anything but an arm's length transaction to procure a loan. Plaintiff does not allege any facts that suggest the relationship created an extraordinary level of trust or reliance on the part of Plaintiff. Furthermore, Plaintiff has not alleged any facts of conduct that rise to the level of "grievous and perfidious misconduct." Thus, Plaintiff has not sufficiently pled a claim in tort for breach of the covenant of good faith and fair dealing.

**B.     Contract**

"It is well established that all contracts impose upon the parties an implied covenant of good faith and fair dealing, which prohibits arbitrary or unfair acts by one party that work to the disadvantage of the other." *Nelson v. Heer*, 163 P.3d 420, 426–27 (Nev. 2007). Where one party to a contract "deliberately countervenes the intention and spirit of the contract, that party can incur liability for breach of the implied covenant of good faith and fair dealing." *Hilton Hotels v. Butch Lewis Productions*, 808 P.2d 919, 922–23 (1991).

Plaintiff states that Defendants failed "to safeguard, protect, or otherwise care for the assets and rights of" Plaintiff. Such a conclusory and ambiguous statement cannot support Plaintiff's claim. Plaintiff also alleges that Defendants violated this duty by foreclosing "without the production of documents demonstrating the lawful rights for the foreclosure."

Nevada law provides that a deed of trust is an instrument which may be used to "secure the performance of an obligation or the payment of any debt." NRS § 107.020. When a debtor defaults, the creditor beneficiary may resort to its security in a trustee's sale as a means of satisfying the debtor's obligation. NRS § 107.080.

The procedure for conducting a trustee's foreclosure sale in Nevada is set forth in NRS § 107.080 *et seq*. The foreclosure process is commenced by the recording of a notice of breach and

election to sell by the trustee. NRS § 107.080(2)(b). After the notice of default is recorded, the trustee must wait three months. NRS § 107.080(2)(c). The trustee must then give notice of the time and place of the sale. NRS § 107.080(4). A sale is conducted, monies are bid, and a trustee's deed is issued. Foreclosure procedures must be followed or the sale will be invalid. *See Rose v. First Fed. Sav. and Loan*, 105 Nev. 454, 777 P.2d 1318 (1989) (trustee's sale invalid where notice requirements not satisfied).

Section 107.080 provides that the "power of sale" is conferred upon the "trustee." Section 107.080(b) expressly states that the trustee can execute its power of sale once "[t]he beneficiary, the successor in interest of the beneficiary or the trustee first executes and causes to be recorded in the office of the recorder of the county wherein the trust property, or some part thereof, is situated a notice of the breach and of his election to sell or cause to be sold the property to satisfy the obligation." Thus, under NRS § 107.080, Defendants were authorized to begin the nonjudicial foreclosure process by recording the Notice of Default and Election to Sell.       Nevada Revised Statute § 107.080 does not require the beneficiary or trustee to present the original note or some other documentation to the trustor to allow the nonjudicial foreclosure to proceed. Plaintiff defaulted on the Loan, a fact that he does not contest. Upon default, Defendants were not required to present the original Note to Plaintiff before they could begin the foreclosure process.

For these reasons, Defendants' Motion for Judgment on the Pleadings in connection with this cause of action is granted.

## IX.     FRAUD

Plaintiff alleges that Defendants committed fraud. In federal actions where state law governs fraud claims, the pleading requirements are governed by the Federal Rules of Civil Procedure. When pleading fraud, "the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). Fraud allegations must "be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have

1  done anything wrong." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal
2  quotations omitted).  To comply with Rule 9(b), a complaint must "state the time, place, and specific
3  content of the false representations as well as the identities of the parties to the misrepresentation."
4  *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004) (internal quotations omitted).

5        To establish fraud in the inducement, Plaintiff must prove by clear and convincing evidence
6  each of the following elements: (1) a false representation made by the defendant (2) the defendant's
7  knowledge or belief that the representation was false (or knowledge that it had an insufficient basis
8  for making the representation), (3) the defendant's intention to therewith induce the plaintiff to
9  consent to the contract's formation, (4) the plaintiff's justifiable reliance upon the misrepresentation,
10 and (5) damage to the plaintiff resulting from such reliance.  *See Wohlers v. Bartgis*, 969 P.2d 949,
11 958 (Nev. 1998).

12       Plaintiff alleges that Defendants committed fraud by representing that they were the proper
13 parties with interests in the Loan, but failing to produce the proper documentation.  To the contrary,
14 Defendants have produced the documents establishing Defendants as the proper parties.  (#10, Ex.
15 A–D).  Plaintiff has not alleged any statements that would constitute a misrepresentation.

16       In light of the foregoing, Defendants' Motion for Judgment on the Pleadings on Plaintiff's
17 fraud claim is granted.

18 **X.   DECLARATORY RELIEF**

19       Plaintiff seeks declaratory relief.  Declaratory judgments generally serve to resolve
20 uncertainty faced by potential defendants who face threats of litigation and who may accrue legal
21 liability while waiting for potential plaintiffs to initiate a suit.  *See Societe de Conditionnement en*
22 *Aluminum v. Hunter Engineering Co., Inc.*, 655 F.2d 938 (9th Cir. 1981).  The decision whether or
23 not to hear a declaratory judgment action is left to the discretion of the federal court.  *See*
24 *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 533 (9th Cir. 2008).  Thus, the federal court may
25 decline to address a claim for declaratory relief "[w]here the substantive suit would resolve the issues

1  raised by the declaratory judgment action, . . . because the controversy has 'ripened' and the
2  uncertainty and anticipation of litigation are alleviated." *Tempco Elec. Heater Corp. v. Omega*
3  *Eng'g, Inc.*, 819 F.2d 746, 749 (7th Cir. 1987).

4  Because Plaintiff has no claim for relief for the foreclosure of the Subject Property, Plaintiff
5  has no adequate legal basis for relief.  Thus, the Court declines to exercise and denies Plaintiff's
6  request for declaratory relief.  As a result, Defendants' Motion for Judgment on the Pleadings as it
7  relates to this cause of action is granted.

8  **XI.  INJUNCTION**

9  Plaintiff seeks injunctive relief, asking the Court to order Defendants to produce the
10 necessary ownership documents and to enjoin the sale of the Subject Property.  As the Subject
11 Property has been sold, Plaintiff's request for injunctive relief is moot.  Furthermore, Defendants
12 have produced documents evidencing their ownership or interest in the Loan. (#10, Ex. A–D).

13 **XII.  LIS PENDENS**

14 NRS 14.015 provides that once a notice of pendency has been filed, the defendant may
15 request a hearing in the notice at which time the party who recorded the notice must show, by
16 affidavits or other evidence, the following: (a) The action is for the foreclosure of a mortgage upon
17 the real property described in the notice or affects the title or possession of the real property
18 described in the notice; (b) The action was not brought in bad faith or for an improper motive;
19 (c) He will be able to perform any conditions precedent to the relief sought in the action insofar as
20 it affects the title or possession of the real property; and (d) He would be injured by any transfer of
21 an interest in the property before the action is concluded.  Defendants have challenged the notice of
22 pendency. Nevertheless, Plaintiff has failed to produce evidence or any type of response to show that
23 he filed the notice of pendency on proper grounds.  Because Plaintiff has failed to carry his burden
24 and because of the obvious lack of merit in Plaintiff's claims, the Court must grant Defendants'
25 Motion to Expunge Lis Pendens.

**CONCLUSION**

IT IS HEREBY ORDERED that Defendants' Motion for Judgment on the Pleadings and to Expunge Lis Pendens is GRANTED. In light of this order, IT IS FURTHER ORDERED that Plaintiff's Motion for Voluntary Dismissal is DENIED.

DATED: January 22, 2009

_____
Robert C. Jones
United States District Judge

(bb)